# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
DONNA GORDON, as legal            *
representative of the estate of   *      No. 18-40V
RAY A. GORDON, decedent,          *      Special Master Christian J. Moran
                                  *
              Petitioner,         *      Filed: July 29, 2019
                                  *
v.                                *
                                  *      dismissal; proof of vaccination
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *
                                  *
              Respondent.         *
* * * * * * * * * * * * * * * * * * * *
```

Sylvia Chin-Caplan, Law Office of Sylvia Chin-Caplan, Boston, MA for
petitioner;
Daniel A. Principato, U.S. Dep't of Justice, Washington, DC, for respondent.

## UNPUBLISHED DECISION DENYING COMPENSATION[*]

Donna Gordon filed a petition for compensation under the National
Childhood Vaccine Injury Compensation Program (the "Vaccine Act" or
"Program"), 42 U.S.C. § 300aa-10—34 (2012), alleging that her husband, Ray
Gordon, suffered from Guillain-Barré syndrome and ultimately passed away as a
result of the influenza ("flu") vaccine Mr. Gordon received on January 19, 2015.
Pet., filed Jan. 8, 2018, at 1.  In his Rule 4 report, the Secretary challenged the fact
that Mr. Gordon had received a flu vaccination and asserted that the medical
records did not support that the vaccination occurred.  Resp't's Rep., filed Feb. 25,
2019, at 7-8.  At a March 18, 2019 status conference, the undersigned advised that

---

[*] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17,
2002), requires that the Court post this decision on its website.  Anyone will be able to access
this decision via the internet (https://www.uscfc.uscourts.gov/aggregator/sources/7).  Pursuant to
Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical
information or other information described in 42 U.S.C. § 300aa-12(d)(4).  Any redactions
ordered by the special master will appear in the document posted on the website.

the Rule 4 report would be treated as a motion to dismiss and set a schedule of filings to address the issue of vaccination documentation.  Order, issued Mar. 19, 2019.  Ms. Gordon filed a response arguing that a standing order for flu vaccination combined with later refusals of flu vaccination was sufficient to establish that the flu vaccination occurred.  Pet'r's Resp., filed Apr. 18, 2019.  The Secretary filed a reply highlighting the lack of any medical records documenting the flu vaccine administration and various notations that Mr. Gordon had actually refused the flu vaccination.  Resp't's Reply, filed May 2, 2019.

Based on a review of the record, the undersigned finds that Ms. Gordon has not established that the vaccinee, Mr. Gordon, received the flu vaccine and, accordingly, the motion to dismiss is GRANTED and the petition is DENIED.

## Facts

Mr. Gordon was born in 1956.  At age 58, Mr. Gordon had a complicated medical history of diabetes, hypertension, osteoarthritis, obesity, bilateral knee pain, shoulder repairs, and carpel tunnel release surgeries.  Exhibit 1, tab A, at 33-34.  At that time, Mr. Gordon had complaints of groin and hip pain for the past year that led him to consult with an orthopedist.  Exhibit 3 at 5-6.  The orthopedist recommended hip replacement, and the surgery was eventually scheduled for January 2015.  Id. at 10.

On January 19, 2015, Mr. Gordon checked into the hospital for his hip replacement surgery.  Exhibit 1, tab A, at 49, 64.  On the same day, the surgery was completed.  Id. at 62.  Following the surgery, a registered nurse signed a standing order for Mr. Gordon to receive the flu vaccine.  Id. at 4.  The vaccination protocol flow chart that accompanied the standing order explains that either a physician must write to cancel the vaccine protocol, or the administration of the vaccine must be documented.  Id. at 5.  In her affidavit, Ms. Gordon stated that "While in the recovery room on the day of the surgery, [Mr. Gordon] received pneumonia and influenza vaccines."  Exhibit 10 ¶ 4.

On January 22, 2015, Mr. Gordon was discharged from the hospital.  In the discharge instructions, two orders for the influenza vaccine (#1 and #20) note that "NO OCCURRENCES CHARTED" and "Patient Refused."  Exhibit 1, tab A, at 313-14.  For both of the orders, the discharge instructions note "ORDER DISCONTINUED."  Id.  For other medications that Mr. Gordon received during his hospital stay, the discharge instructions contain the time and date of numerous administrations of the medications.  Id. at 315-33.  In the "Vaccines" summary

section, the discharge instructions note that Mr. Gordon "Refused Flu Vaccine (Follow up with physician or clinic)." Id. at 360.

Following some intervening medical care, on May 13, 2015, Mr. Gordon was admitted to the hospital complaining of pneumonia and "progressive left upper extremity weakness to his left arm, specifically his left hand." Exhibit 1, tab A, at 425. The medical records for this hospital stay contain a standing order from the date of admission with a box checked for "Declines flu vaccine at this time." Id. at 6. The order has another box labeled "Previously immunized during this current flu season (September 1st through March 31st)" which is not checked. Id. The order also has an instruction "Inactivated Influenza Vaccine: Offer Oct 1st through March 31st" and a handwritten note "Out of Season." Id. On May 22, 2015, Mr. Gordon was discharged from the hospital. Id. at 639.

On June 15, 2015, Mr. Gordon was admitted to the hospital again due to "slight progressive weakness" and the inability to walk on his own. Exhibit 1, tab B, at 1186. The medical records for this hospital stay also contain a standing order dated June 17, 2015, with a box checked for "Declines flu vaccine at this time." Exhibit 1, tab A, at 10. The order has another box labeled "Previously immunized during this current flu season (September 1st through March 31st)" which is not checked. Id. The order has an instruction "Inactivated Influenza Vaccine: Offer Oct 1st through March 31st." Id. Mr. Gordon was then discharged on June 17, 2015. Exhibit 1, tab B, at 1239.

After being hospitalized for a cardiac arrest in July 2015, Mr. Gordon remained hospitalized in different facilities until he passed away on June 2, 2016. Exhibit 7 at 670. The petition alleges that Mr. Gordon's death was due to the vaccination.

## **Legal Standard**

The Vaccine Act requires that all petitions contain "supporting documentation, demonstrating that the person who suffered such injury or who died [] received a vaccine set forth in the Vaccine Injury Table." 42 U.S.C. § 300aa-11(c)(1)(A). If any of the supporting documentation for establishing the vaccination has not been filed, the petition must identify the supporting documentation that is unavailable and the reasons for its unavailability. 42 U.S.C. § 300aa-11(c)(3). All matters required to be in the petition, including proof of vaccination, must be established by a preponderance of the evidence. 42 U.S.C. §

300aa-13(a)(1)(A).  Lay testimony may establish a vaccine administration.  <u>Epstein v. Sec'y of Health & Human Servs.</u>, 35 Fed. Cl. 467, 478 (1996).

To request that a special master determine whether a vaccination has been administered, both parties have moved for a ruling on the record.  <u>Smith v. Sec'y of Health & Human Servs.</u>, No. 14-982V, 2017 WL 2927419, at *1 (Fed. Cl. Spec. Mstr. June 2, 2017) (motion by respondent); <u>Goins v. Sec'y of Health & Human Servs.</u>, No. 15-848V, 2017 WL 1231687, at *2 (Fed. Cl. Spec. Mstr. Mar. 10, 2017) (motion by petitioner).

## <u>Discussion</u>

Unlike other cases in which the administration of the vaccination is called into question, this case has medical records from the time when the vaccination is alleged to have occurred.  The parties are primarily disputing the interpretation of the medical records.

When Mr. Gordon was in the hospital for his hip replacement surgery, there was a standing order for a flu vaccination entered on January 19, 2015.  Exhibit 1, tab A, at 4.  As noted in the vaccine protocol, one of the initial steps is that the registered nurse signs the standing order for the vaccination, which is a separate step from the administration or documentation of the vaccination.  <u>Id.</u> at 5.  If the vaccination is administered, the protocol dictates that the vaccination would then be documented in the hospital's electronic medical records system.  <u>Id.</u>

However, there is no record affirmatively indicating that anyone in the hospital administered the flu vaccine to Mr. Gordon.  Moreover, this is not a situation in which there is an absence of notation regarding administration.  Affirmative evidence indicates that the vaccine was not administered:  The notations for the two influenza vaccine orders (#1 and #20) indicate "NO OCCURRENCES CHARTED" and "Patient Refused."  Exhibit 1, tab A, at 313-14.  In the "Vaccines" summary section, the discharge instructions note that Mr. Gordon "Refused Flu Vaccine (Follow up with physician or clinic)."  <u>Id.</u> at 360.

At the end of the four-day hospital stay for Mr. Gordon's hip replacement surgery, the discharge instructions meticulously document all of procedures and medications that Mr. Gordon received.  <u>Id.</u> at 313-64.  For the many other medications Mr. Gordon received during his hospital stay, the discharge instructions contain numerous notations of the time and date of administration.  <u>Id.</u> at 313-33.  The detail in the hospital's medical records and the adherence to

protocol strengthen the presumption that if Mr. Gordon had received the flu vaccine, then it would have been documented.  While Ms. Gordon argues that her husband must have received the flu vaccine because the vaccine protocol requires a physician to cancel the standing order, the discharge instructions note "ORDER DISCONTINUED" for both of the flu vaccine orders.  Id. at 313-14.

For the vaccine standing orders from Mr. Gordon's May and June 2015 hospital admissions, the parties dispute the interpretation of the boxes for "Declines flu vaccine at this time" being checked.  Id. at 6, 10.  Ms. Gordon asserts that Mr. Gordon would have refused the flu vaccine because he had already received it in January 2015.  The Secretary argues that if Mr. Gordon had received the flu vaccine in January 2015, then the boxes for "Previously immunized during this current flu season (September 1st through March 31st)" would have been checked.  However, neither party addressed the instruction on both orders "Inactivated Influenza Vaccine: Offer Oct 1st through March 31st" nor did they address the handwritten note "Out of Season" on the May 13, 2015 order.  Id. Although the Secretary's argument is logical that if Mr. Gordon had received the flu vaccine in January 2015 then the May and June 2015 orders would have checked a box to reflect that fact, this argument does not take into account the time of year that the orders were completed.  From the instruction on the forms to offer flu vaccines between October 1 and March 31 and the "Out of Season" handwritten note, it is most likely that Mr. Gordon was not even offered the flu vaccine during his May and June 2015 hospital stays.  Therefore, these subsequent vaccine standing orders do not help determine whether Mr. Gordon received the flu vaccine in January 2015.

The lone testimony in support of Mr. Gordon's flu vaccination is Ms. Gordon's affidavit stating, "While in the recovery room on the day of the surgery, [Mr. Gordon] received pneumonia and influenza vaccines."  Exhibit 10 ¶ 4.  Ms. Gordon has not explained the basis for her knowledge that Mr. Gordon received the flu vaccine.  It is unclear if Ms. Gordon personally witnessed the flu vaccination, heard about it from Mr. Gordon, was told about it by medical personnel, or had some other basis for her knowledge.  While lay testimony can help establish the administration of a vaccine, this statement from Ms. Gordon carries less evidentiary weight than the medical records discussed above.

As noted above, in the absence of a medical record, the petitioner must identify the missing record and explain the reasons for its unavailability.  42 U.S.C. § 300aa-11(c)(3).  Here, Ms. Gordon has not identified any missing medical

records concerning the flu vaccine administration, nor has she explained why such a record would be unavailable.

In sum, the undersigned finds that Mr. Gordon's medical records for his January 2015 hospital stay appear to be complete and coherently indicate that a flu vaccination was ordered for Mr. Gordon but was never given.

## **Conclusion**

Accordingly, because the undersigned has found that the evidence does not support that Mr. Gordon received a flu vaccination, Ms. Gordon cannot succeed on her petition.  Thus, the Secretary's motion to dismiss is GRANTED and this case is DISMISSED for failure to establish the threshold requirements for the content of a vaccine petition detailed in 42 U.S.C. § 300aa-11(c)(1)(A).  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master